Next case on our call this morning is Agenda No. 7, 106203, People v. Mildred Laugharn. Council may proceed. Arden Lang May it please the Court, Ms. Saunders. My name is Arden Lang, and I represent Mildred Laugharn, who seeks redress from the Appellate Court's 2008 opinion in this case. Ms. Laugharn has been convicted of murder, and in a 2004 Section 1401 petition, she sought redress from that conviction. And this case was percolating in the courts when this Court's decision in People v. Vincent was decided. And at that point, this Court entered a supervisory order asking the 4th District Appellate Court to reconsider its original affirmance in light of Vincent. Sadly, that is not what the Appellate Court actually did, either by misconstruing this Court's mandate or through inadvertence. As a result, the issue before this Court, which was not decided strictly in Vincent, remains open. And the issue is whether a Section 21401 petition may be decided by the trial court, sua sponte, on grounds of untimeliness. This Court's decision in Vincent, by contrast, dealt with a judgment on the pleadings, and Vincent offered guidance to the lower courts of the state on what the trial court could do when there was an insufficient pleading. But Vincent never answered the question of whether a trial court could just dismiss sua sponte on the basis of untimeliness. Didn't Vincent say that the Post-Conviction Hearing Act, which provides collateral relief for convictions, has no application whatsoever to 1401 petitions and is an entirely different form of statutory relief? Yes, of course. Yes. I mean, I wasn't suggesting that Vincent was – I was not stating the full breadth of Vincent, which was a rather rich opinion. In their ruling, which held, I think, that diligence is an element in both the original action and in presenting the petition, the two years should be viewed as an element that a petitioner needs to prove in order to survive dismissal. I'm sorry, I couldn't quite hear. In Arun, I thought it was held that since diligence is an element in both the original action and in presenting the petition, the two years should be viewed as an element that a petitioner needs to prove in order to survive dismissal. Your Honor, I know that you have suggested that the timeliness factor is an element and in other instances when this Court has looked at the timeliness factor, it has concluded that timeliness is actually a statute of limitation and not an element. For instance, in the Consley, this Court did use the term of limitation and not of element. And if you are to read the State's brief, not that you haven't, but the State's brief basically concedes that untimeliness is actually a statute of limitation and not an element of a 214.01 petition. This Court has stated in People v. Harvey that the limitation period may be waived by the State. So there is some longstanding precedent. Is it waived here? Are you saying that the position that it was waived by the State? No, the State never got a chance to waive it here, although the State actually didn't file a response of pleading of any kind in this case. The Court was the one to swastante, make its determination, but never made it on any basis on the pleading, only on the basis of untimeliness. So you would just like our Court to adopt the same rationale we did with respect to post-conviction petitions, namely that you can't summarily dismiss based on timeliness because it's an affirmative defense that can be waived by the State? Is that the short of it? I know that it's a different statute, but yes. The rationale. By analogy. Yes, only by analogy. Yes, Your Honor. Was timeliness argued to the appellate court on the first petition? Yes and no. I admit that the word timeliness was not used. The Court was aware of the fact that the trial court had dismissed on timeliness grounds. At the time that the issue first came up through the courts, the law was developing in the terms of notice and opportunity to be heard, which, of course, this Court stated in Vincent was not to be the case. But that notice and opportunity would have also given Ms. Laharn, in this case, the opportunity to amend her petition to state if she had grounds to show that there was no, to show that she had a defense to the untimeliness matter or finding of the trial court. I'm sorry, go ahead. And there are other, I don't believe that this, the State has argued that this issue has been forfeited. It was before the appellate court. The dissent was discussed the timeliness issue, stated that a Section 214.01 petition shouldn't be dismissed on untimeliness grounds. The appellate court never responded to the dissent. The matter was clearly before the appellate court, and the appellate court really chose not to deal with the timeliness issue by stating one way or the other what it was thinking. It can only be assumed that it was dismissing this case on untimeliness grounds or affirming the dismissal on untimeliness grounds. The untimeliness portion, it's a specific requirement of the statute, isn't it, that makes it a little different than the garden variety of statute of limitations? Well, it is in the, it is part of the statute, yes. Yeah, I think some of the language from Vincent states that the circumstances that would allow for an acceptance of that window would only be known to the petitioner. And when there was discovery of the moratorious defense, so why isn't it fair to require a petitioner to allege on the face of the petition the facts that would allow for the relaxation of the window? I would think that this statute is completely different from the post-conviction relief statute. Well, the post-conviction relief statute is a much larger statute. It has many sections to it, one section of which contains the limitations provision. That's true, whereas this is a smaller statute. It stands by itself. This is somewhat of a follow-up question, though, and that's even assuming that we agreed with you on your timeliness analysis. Isn't harmless error still an element to this case? Harmless error analysis is pertinent to any case, but I think that that should not actually affect the results in this case. Again, the reason I thought it might be a follow-up to Justice Freeman's question is that under no circumstance, given the record, is the defendant going to be successful. Well, Your Honor, I think that's accurate. I'm not saying it is, but that's certainly the State's position. That is the State's position. I would disagree with that assessment. First of all, no judge has ever looked at the pleadings in this case. The trial court has never looked at the pleadings. The appellate court has never looked at the pleadings. Certainly this court may have looked at the pleadings, but has not made an analysis of the pleadings. It would be appropriate for the trial court to be the first court to look at the pleadings in this case, the court that sat and heard the evidence, and that is what the trial court is required to do to make a determination. In Vincent, which dealt with the judgment on the pleadings, there was a legal determination made that relief could never be granted, because it dealt with consecutive and concurrent sentences, and it was strictly a matter of law. The pleadings in this case are not strictly a matter of law. They should be looked at. We don't know if the case went back to the... What particular pleadings should be looked at? Is there a particular alleged fact or an argument that would change this all around? I don't know if it would change it all around or if that is even the fair way to look at the pleading. There are allegations of fact. We don't know if the trial court were to look at the facts, the trial court might allow Ms. Laharn to amend the pleadings, which the trial court could do. There are allegations that there is some newly discovered evidence that caused her... that have come to light that deal with some of the forensics that were done in the case. In this case, Ms. Laharn's husband was killed in a recliner. Her defense was self-defense. There are some issues as to whether the recliner had been moved, indicating maybe that there was a struggle. There is a neighbor who gave some damaging testimony about how Ms. Laharn behaved, and there is perhaps some new evidence about the neighbor's bias and motive for testifying, as he did. There might have been a monetary motivation. So it's not... I would submit it's not the kind of pleading that we can just dismiss out of hand or that this court should use de novo review to look at, but really it's the trial court's obligation in this case to look at those pleadings with a careful eye. And then the trial court would have the ability to dismiss it. He would have the ability to... Ms. Laharn can't make a, you know, cannot find one of the four possible excuses for her lack of, you know, showing lack of diligence. The trial court could ask her to amend these pleadings. So I think it would be premature for this court to look at the pleadings for the first time. If that answers your question. And I'd like to get back a little bit to the forfeiture question that was asked. The record is on timeliness, and the record is on time. The record is before this court. The appellate court had that information before it. It knew what the trial court's decision was. The appellate court in this case had a one-sentence evaluation in this case, basically saying that it was going to reaffirm what it had done before in its first opinion. And that's an inadequate analysis for us to deal with. I would submit that Ms. Laharn should be able to have her day in court, however brief that may or may not be, that the equitable powers of Section 214.01 should be available to her to have her conviction reexamined. And I would ask this court to allow her to do that. If there are no further questions. Thank you. Good morning. May it please the court and counsel, I'm Assistant Attorney General Katherine Saunders on behalf of the people in this appeal. There are really three main points I wanted to highlight this morning. The first is that Petitioner did in fact forfeit the claim she presents to this court on appeal by failing to raise it to the appellate court. The second is that because Petitioner didn't present her claim to the appellate court, the appellate court really had no cause to rule upon it, and therefore its decision should not be read as sanctioning sui sponte dismissals of Section 214.01 petitions on untimeliness grounds. And third and finally, regardless of the rationale underlying the appellate court's decision, this court can and should affirm on the ground that Petitioner's claims simply provide no basis for 214.01 relief. Ms. Saunders, on the forfeiture issue, obviously we took the case in hopes of getting to the main issue, 214.01. Is this a little bit different since the only basis for the trial court's ruling was timeliness? And couldn't we get to the issue based on the fact that that was their ruling? I know the technical forfeiture issues that you're making, but that was all the trial court talked about was timeliness. That's correct. Your Honor, I would disagree. In fact, Petitioner mentions that, well, Vincent was percolating and she had no cause to raise this, but really Petitioner could and should have, if she wanted to present this issue and preserve it for appellate review, should have raised it like the Petitioner and Malloy did. Petitioner and Malloy said, the third district appeal mentioned in our brief, Petitioner and Malloy said, pre-Vincent, no sua sponte dismissal ever, absent notice and opportunity to respond. Or in the alternative, if it's permissible in some situations, never on untimeliness grounds. So Petitioner could have done that here. And it's true that, yes, this court obviously took this case to reach this issue, and the court could excuse Petitioner's forfeiture. But it brings me to my second point, which is having failed to raise this issue in the appellate court. Even if this court were to excuse that forfeiture, the appellate court really, because she didn't present the issue, the appellate court's decision shouldn't be viewed as having passed upon that issue. So even if we get over that forfeiture hurdle, we still have to determine what the appellate court held. And Petitioner's brief and her argument in that appeal informs our understanding of the appellate court opinion. Because she didn't raise it, the appellate court's opinion shouldn't be read to sanction sua sponte dismissals of 214.01 petitions. Instead, what happened is that the appellate court, simply following this court's supervisory order, properly applied this court's holding in People v. Vincent to reject Petitioner's sole argument, which was that a trial court may never dismiss a 214.01  petition. So considered in the context, again, of that argument to the appellate court, the appellate court's decision is really best read to hold merely consistent with Vincent that legally and factually insufficient petitions are subject to sua sponte dismissal. And as to how to reconcile the majority of people. I have to go back to the fact, though, that it's not the typical situation. I mean, the appellate court then still allows the real issue of the trial court to stand. The real issue determined by the trial court, the basis being timeliness, not being addressed. I understand what you're saying, that they could have brought this to the appellate court, and since they didn't, it's not them that the trial court did, but in a certain sense, that's left out there. Not precedential, maybe, but left out there. Okay, I believe it's this court's holding in Deneen where really the problem, the failure, the court's failure to address what we now see as the real issue is essentially Petitioner's fault for having failed to raise it. The appellant is the master of the issues by presenting and framing the issues to the appellate court. That's how we determine what the appellate court will, in fact, decide. And having failed to raise it, Petitioner apparently did not believe that that was the issue that she wanted to address. She really wanted, again, this was brief pre-Vinson, the issue that Petitioner wanted decided was whether sua sponte dismissal was ever permitted. Again, as to how to reconcile the majority opinion with the dissent, the majority opinion simply has to be how Petitioner, to the argument presented in her brief, while the dissent went outside of the briefing and addressed what we now believe to be the real issue, the sua sponte dismissal on timeliness grounds. But taking up my third point, even if this court were to reject the people's reading of the appellate court decision, regardless of the reason underlying it, this court should still affirm. Because this court, of course, reviews the appellate court's judgment and not its reasoning. And Petitioner's claims here, in light of the record, provide no basis for Section 214.01 relief, and they simply can't be salvaged by amendment. I'd first point out that she failed to support her factual assertions with any affidavit or others showing as to matters not of record as required by Subsection B of the statute, and so her factual assertions are lacking evidentiary support. But even overlooking that and taking those factual assertions as true, her claims are simply insufficient as a matter of law. When you look at her first claim, ineffective assistance of counsel, counsel should have impeached the neighbor, Frank Burnett, regarding the length of time he had known the Petitioner. And she said counsel should have presented expert testimony to show that that recliner in which Bob was sitting had been moved. But that's legally insufficient. This court has long held that 214.01 is not the forum for legal issues such as ineffective assistance of counsel. And the claim also suffers from other infirmities. Petitioner can't show diligence, which, as Justice Freeman mentioned, is an element of the statute. The fact that counsel didn't conduct this impeachment or didn't present this expert testimony was known to her by the time of trial in 1996. The issue of whether the recliner was moved, the underlying issue, underlying ineffective assistance of counsel, was fully explored at trial, and therefore, again, provides no basis for Section 214.01 relief. And further, as the prosecutor stressed in closing argument, Petitioner never testified that the recliner was moved during this struggle. So therefore, this evidence was really of limited relevance at best. And as to her assertion... In addition to your forfeiture and your harmless error argument, does the state have a position as to whether or not a 214.01 petition can be dismissed for timeliness? Well, obviously, Your Honor, this Court has not spoken directly to the matter, but I would agree with Petitioner that this Court's precedent strongly suggests that such a dismissal would not be proper. Pinconsley, again, and Harvey, which in turn cited a First District decision in People v. Ross, all three of those decisions suggest that such a dismissal would be improper because the statute of limitations is, in effect, a deferment of defense that can be waived by the state. So if we decide to address the issue, there would be some benefit in being clear on that, and then you would then go into your harmless error and say, in this particular case, it doesn't make any difference? That's correct, Your Honor. In fact, in the posture of this case, of course, I'm looking now at page 14 of your brief where you cite to Pinconsley, which says, if the party opposing the petition does not, or where you say the party does not assert the limitations period as a defense, it may be forfeited. You didn't, the state didn't have an opportunity to either forfeit the issue or not in this case. No, that's correct. If, in fact, we should determine that the state should have that opportunity, the case could also be sent back, and at that point, if the state does not, or if the state opposes on the basis of timeliness, then it becomes the petitioner's burden to show fraud or duress or concealment. Is that correct? Correct. If, in fact, this Court were to remand for that very petition, yes, it would be our duty, the state's duty to raise the issue and then petitioner's burden to show fraud, duress, concealment. That's correct. And wouldn't we have to overrule Pinconsley? Pinconsley, I think it is, in order to say, that this trial court can do what it did in this instance simply on the basis of the petition not being timely. I'm sorry, I didn't understand the question. Would we have to overrule Pinconsley to find that the trial court... Oh, no, no, Your Honor, it's entirely consistent with Pinconsley. What the trial court did here is consistently consistent. What the trial court did here, what the trial court did was inconsistent. What I meant to say was that if this Court were to remand, that remand would be consistent. I'm sorry. Turning back to petitioner's claims, her assertion that Frank and Helen Jean Burnett, the neighbors, knew her a long time because they'd gone to the same high school and that Frank had falsely testified that he'd known her for a shorter period of time. Really, even if that's true and petitioner had been impeached with this kind of inconsequential information, it wouldn't prevent an entry of the judgment, particularly in light of the fact that three other law enforcement officers gave the same testimony about petitioner's demeanor and the fact that the living room hadn't been disturbed and her clothing and hair had not been disturbed. Petitioner's second claim is a discovery violation claim. She says the state failed to disclose the contents of the victim's will. Again, a legal issue, not a factual one, not properly pursued in 214-01. And it fails on another basis as well because she raised this issue in her post-trial motion and on post-conviction and the court rejected it on both occasions. And finally, the gist of her remaining contentions are really fairly summarized as a claim that she didn't intend to kill her husband. To the extent, again, that this is a sufficiency of the evidence, a constitutional due process sort of a claim, it would be a legal issue, not a factual one, not cognizable. It could possibly be construed as a claim of actual innocence, which would be properly cognizable in a 214-01. But it would fail because the issue of her intent was fully litigated at trial. And the only evidence she offers in support of her claim is her assertion that the state was willing to engage in plea bargaining and would have accepted a plea to second-degree murder. Again, no diligence because Petitioner would have known of this before trial. It's not a valid defense because, as this Court is well aware, it doesn't show that Petitioner, even this plea bargaining evidence, doesn't show that Petitioner lacked the intent for first-degree murder because second-degree murder, of course, is just a lesser mitigated offense of first-degree murder. They share the same intent element. The mitigating factor mitigates the crime to second-degree murder but, of course, does not negate the intent element. And there's also just the record is replete with ample evidence of her intent. She shot at Bob three times again while he was sitting in his recliner smoking a cigarette. Firing a gun, of course, at a person supports the conclusion that the person shooting intended to kill. And Petitioner even provided direct evidence of her mental state when she testified on cross-examination that she knew that when you shoot someone, you could hurt them very badly or perhaps kill them. So, again, here is Malloy. Reversal and remand would merely delay the ultimate decision. This Court should nonetheless affirm this Court's judgment because it was correct. If there are no further questions, we'd ask that this Court affirm the appellate court's judgment. Thank you. Opposing counsel doesn't seem to be troubled by the rather terse appellate court opinion on remand from this court, or not on remand but following this Court's supervisory order. And I happened to recently be reading in another context this Court's second decision in the Cabalas case. And I read this Court's analysis of the Cabalas case in light of the Supreme Court's, the United States Supreme Court's decision. This Court looked at what the United States Supreme Court, the way that it interpreted the law. This Court then applied it to Cabalas in a very thoughtful opinion, and it was a very detailed opinion. And it didn't leave open questions as to what this Court meant. It's an opinion which stands on its own. By contrast, the appellate court's decision in this case merely alluded to the sort of the bare bones of Vincent. It alluded to its prior decision in this case, which was a very detailed one. It held certain findings that this Court eschewed in Vincent, and then just said for these reasons we affirm the trial court. The trial court in this case did not make any judgment on the pleading. It did not make any judgment on the facts. It made a judgment on untimeliness. The appellate court has never made a judgment on the pleadings. The appellate court has never made a findings on the fact. And I would say that this case furthermore is in a different position than the trial court. And people v. Deneen referred to in the state's brief as to forfeiture. In Deneen, the appellant, I believe it's the appellant, it might have been the appellee, waited beyond the point of petition for leave to appeal, beyond the point of filing its initial brief in this court, and at the last minute came up with an entirely new theory of defense. And this court said that that was a forfeited issue because it came too late. By contrast, the appellate court and this court know that there is an untimeliness determination, and I would submit that the case needs therefore to be returned to the trial court. And if there are no further questions, I would ask for such relief. Thank you very much.